[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 27, 2004
THOMAS K. KAHN
CLERK

————————————————

No. 02-15549

————————————————

D. C. Docket No. 02-00470-CV-J-20

ROBBIE LEE LAND,
DONNA LAND,

Plaintiffs-Appellants,

versus

CIGNA HEALTHCARE OF FLORIDA,
a Florida Corporation,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

**(August 27, 2004)**

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before MARCUS and WILSON, Circuit Judges, and RESTANI[*], Judge.

PER CURIAM:

---

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

After we issued our decision in this case on July 30, 2003, *Land v. CIGNA Healthcare of Florida*, 339 F.3d 1286 (11th Cir. 2003), the Supreme Court vacated and remanded for further consideration in light of its recent decision in *Aetna Health Inc. v. Davila*, 542 U.S. ----, 124 S. Ct. 2488 (2004). After carefully reviewing *Davila*, we find that Land's state law malpractice claims against his health maintenance organization ("HMO") were preempted by Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001-1461.

Land, a subscriber to a healthcare plan administered as an HMO by CIGNA, sought treatment at a hospital emergency room for an injury to his hand caused by a bite from his family cat. A CIGNA-approved hand specialist diagnosed him with cellulitis, ordered that he be given an injection of antibiotics, and prescribed an additional course of antibiotics to treat his injury. After Land's condition worsened, Land's physicians ordered that he be admitted to the hospital for aggressive antibiotic treatment and constant monitoring.

Shortly after his admission to the hospital, a CIGNA approval nurse approved the use of intravenous antibiotics, but determined that Land was suffering from a localized infection that did not require hospitalization. Land was discharged later that evening.

Within a week, Land's condition had worsened considerably, and he developed an abscess extending into the joint between his hand and middle finger. Outpatient surgery was performed to drain, irrigate, and debride one of his joints. He was diagnosed with osteomyelitis in the finger. After a pathology report revealed serious infection and the presence of potentially lethal organisms in the finger, Land underwent several additional surgeries. After none of the surgeries proved successful, Land's middle finger was amputated.

Land filed suit against CIGNA in state court, alleging that CIGNA was negligent in the care and treatment of his infection. CIGNA removed the case to federal court, asserting that Land's claims implicated ERISA. Land moved to remand the case to state court. The district court denied the motion to remand, and granted CIGNA's motion to dismiss Land's complaint without prejudice, finding that his state law claims were completely preempted by ERISA.

The central issue in the case initially before us hinged on a determination of the true nature of Land's claims. Heavily relying on the analysis set forth in the Supreme Court's opinion in *Pegram v. Herdrich*, 530 U.S. 211 (2000), we concluded that the approval nurse's decision to authorize outpatient rather than inpatient treatment of Land constituted a "mixed" eligibility and treatment decision. *See Land*, 339 F.3d at 1292. We found that it was unlikely that

3

Congress intended to federalize malpractice claims such as Land's under ERISA § 502(a)(1)(B). *See id.* at 1293. Moreover, we concluded that because Land's claims could not be characterized as contract claims to recover benefits, but were tort claims based on the duty of care, his claims did not fall within the scope of ERISA's civil enforcement provisions. *See id.* We thereby found that the district court lacked subject matter jurisdiction, and that remand to the state court was required. *See id.* at 1294. Following a petition for a writ of certiorari, the Supreme Court vacated and remanded our decision for further consideration in light of *Davila.*

In *Davila*, the Supreme Court found that the duties imposed by state law regarding the handling of coverage decisions did not arise independently of ERISA or the terms of the plans in question. *See Davila*, 124 S. Ct. at 2497. The Supreme Court thereby found that the state causes of action fell "within the scope of" ERISA § 502(a)(1)(B), and were thereby preempted and removable to federal district court. *Id.* at 2502. The Court also cast doubt on our analysis of and reliance on *Pegram*, finding that *Pegram* is only implicated in circumstances in which the healthcare professionals brought to suit are either the injured party's treating physicians or the employers of the injured party's treating physicians. *See id.* at 2500-02. As the Supreme Court seems to suggest, such is not the case here.

4

In light of the Supreme Court's conclusions, we find that Land's causes of action, brought to remedy the denial of benefits under an ERISA-regulated benefit plan, fall within the scope of, and are completely preempted by ERISA § 502(a)(1)(B), and are thus removable to federal court. We therefore affirm the decision of the district court.

**AFFIRMED.**